T.C. Memo. 1997-349


UNITED STATES TAX COURT


JOHN F. DAUGHARTY AND SARAH R. DAUGHARTY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

FAYE E. DAUGHARTY, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket Nos. 6023-95, 6280-95.          Filed July 29, 1997.


<u>James D. O'Donnell</u> and <u>John W. West, III</u>, for petitioners
John F. and Sarah R. Daugharty.

<u>Kenneth G. Anderson</u>, <u>James P. Stevens</u>, and John Callender
(specially recognized), for petitioner Faye E. Daugharty.

<u>Willie Fortenberry, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes:

John F. and Sarah R. Daugharty
docket No. 6023-95

| Year | Deficiency |
| --- | --- |
| 1991 | $4,583 |
| 1992 | 8,680 |
| 1993 | 8,406 |

Faye E. Daugherty
docket No. 6280-95

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| --- | --- | --- | --- |
| 1988 | $4,701 | $1,175 | $302 |
| 1989 | 4,568 | 1,142 | 309 |
| 1990 | 4,395 | 1,099 | 288 |
| 1991 | 4,208 | 1,052 | 241 |
| 1992 | 3,967 | 992 | 171 |
| 1993 | 3,840 | 960 | 160 |

In order to protect the Government from a potential whipsaw, respondent has taken inconsistent positions in these dockets.

The issues for decision are:  (1) Whether payments made by petitioner John F. Daugharty to his former spouse, petitioner Faye E. Daugharty, in the amount of $30,000 per year constitute alimony or, alternatively, a property settlement; and (2) if we find that these payments constitute alimony, whether petitioner Faye E. Daugharty is liable for additions to tax for failure to file a timely return pursuant to section 6651(a)(1) and failure

to pay estimated tax pursuant to section 6654 for each of the years in issue in docket No. 6280-95.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners John F. and Sarah R. Daugharty and petitioner Faye E. Daugharty all resided in Jacksonville Beach, Florida, when they filed their petitions in these cases.[1]

Background

John and Faye were married on March 20, 1958, in Atlanta, Georgia. During their marriage, which lasted over 22 years, John and Faye had three children, one of whom was a minor when the marriage dissolved in 1981.

Following his graduation from the University of Georgia in 1958 with a degree in business administration, John was employed in credit and financial related capacities and eventually became manager of General Electric Credit Co.'s finance department, where he served until his retirement.

In or around 1965, John and Faye relocated to Jacksonville, Florida. On August 13, 1970, John entered into a contract to purchase the Landon Imperial Apartments for $155,000. Landon Imperial Apartments is an 80-unit apartment complex located in Duval County, Florida. The contract provided that the seller

---

[1]Petitioner Sarah R. Daugharty is a party to these proceedings solely as a consequence of having filed joint returns with petitioner John F. Daugharty.

would convey the property subject to an existing mortgage in the original principal amount of $700,000.  The $155,000 that John paid to the seller came from his individual funds.  On September 1, 1970, the seller executed a Warranty Deed conveying the apartments to John and Faye.  The deed stated that the purchasers were acquiring the property subject to a mortgage from Bisbee-Baldwin Corp.

John's and Faye's Divorce

On January 5, 1981, Faye filed a Petition for Dissolution of Marriage in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida[2] (case number 81-112-CA).  On February 3, 1981, Faye's and John's marriage was dissolved pursuant to a Stipulation and Final Judgment of Dissolution of Marriage (Stipulation and Final Judgment).  The Stipulation provided, in relevant part, as follows:

> in order to settle the issues relating to the financial
> affairs of the parties as to property rights, alimony,
> custody and support of the minor child of the parties,
> and in consideration of these promises and of the
> mutual promises hereinafter set forth, each party
> hereto accepts and will be bound by the following
> provisions * * *

---

[2]Hereinafter, unless otherwise indicated, we shall refer to the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, as the "Fourth Judicial Circuit".

The terms of the Stipulation and Final Judgment essentially provided for the following:

(1) Faye would receive custody of the parties' minor child, while John had visitation privileges and was responsible for all the child's expenses.

(2) Faye would receive exclusive possession of the parties' home in Jacksonville, Florida, which was to be placed on the market for sale. John was responsible for mortgage payments, ad valorem real estate taxes, and insurance for up to 1 year while the home was on the market. If the home were sold within this period, John and Faye would each receive one-half of the net equity therein. Following the sale, Faye was to receive all furnishings and furniture.

(3) John would receive from Faye a 2-carat diamond ring.

(4) John was required to make the payments on Faye's automobile for a 1-year period from the date of the agreement.

(5) The parties' Baymeadows Club membership was to be transferred to Faye's name.

(6) John would provide Faye with a gasoline credit card, and he was responsible for the payments thereon for a 6-month period beginning on the date of the agreement.

(7) Faye would convey her interest in the Landon Imperial Apartments, by quitclaim deed, to John.[3]

(8) Following the execution of the Final Judgment, John would pay Faye $1,000 per month for 12 months or until such time as the jointly owned home was sold, whichever was sooner. During this period, John would make all mortgage payments due on the home. After this period, John would pay Faye $2,200 per month for a period of 12 months. For each succeeding 12-month period, John's monthly obligation to Faye would increase by $100 until it reached $2,500 per month. John would then pay Faye $2,500 per month for the remainder of her life or until such time as she remarried. These payments would stop only upon Faye's remarriage or death. In consideration of the mutual promises made between the parties, John bound his estate to make all payments required to be made under the terms of the agreement.

Pursuant to the Stipulation and Final Judgment, Faye executed a Quit-Claim Deed, dated February 3, 1981, conveying her interest in the Landon Imperial Apartments to John. Beginning in 1981, John paid to Faye the amounts required under the Stipulation and Final Judgment.

---

[3]In a Notice of Proposed Property Taxes from the Duval County Taxing Authorities, prepared in or around September 1980, the Landon Imperial Apartments were assessed at a value of $963,700. In a financial affidavit titled "John F. Daugharty II Jacksonville, Florida February 1, 1981", John stated that he had $700,000 of equity in the apartments.

Subsequent Litigation

Subsequent to entry of the Stipulation and Final Judgment, substantial litigation between John and Faye occurred in the Florida State courts, extending until June 1991.

Case No. 81-112-CA

On October 6, 1981, Faye filed a Motion to Set Aside Property Settlement Agreement and to Cancel Deed in the Fourth Judicial Circuit, in which she argued:

> The Wife affirmed her agreement with the terms the Husband had laid down because she was afraid of two possible developments, to-wit:  (a) That if she did not take what the Husband was offering she would get nothing or (b) that if the Husband told Mr. Greene [John's attorney] about the bedroom episode, Mr. Greene might tell her Husband about the law on adultery which Mr. Sulik had told her about and if the Husband found out about that, he would give her nothing.  * * *

Faye requested the court to set aside the Stipulation and Final Judgment pursuant to rule 1.540(b) of the Florida Rules of Civil Procedure.

On or about October 22, 1981, John filed a Motion to Dismiss.  On December 4, 1981, John filed a Supplemental Memorandum in Support of Motion to Dismiss, which stated:

> The wife has assumed the mantel of "shotgunning", having no facts, no basis, and after having enjoyed the benefits of a property settlement agreement which leaves her as a very wealthy woman, after one year when she must part with that which she agreed to do, she now has the "sour grapes".

John's motion to dismiss raised several defenses, including a failure to allege sufficient grounds for relief pursuant to rule

1.540(b) of the Florida Rules of Civil Procedure and a failure to file within a reasonable period.

On December 8, 1981, the Fourth Judicial Circuit granted John's motion to dismiss.  In its order, the court did not elaborate on the reasons for its decision.  This order was affirmed by the District Court of Appeal, First District, State of Florida (District Court of Appeal), in an unpublished per curiam opinion filed August 12, 1982.

On or about January 11, 1982, Faye filed a Motion for Modification and Enforcement of Final Judgment, which contended, among other things, that:

> 2.  The provisions for the Wife in the Final Judgment have proven to be grossly inadequate since the entry of said Final Judgment.
>
> 3.  The Husband's verbal promises made to the Wife assuring her of adequate monies for her support at all times, as relied on by the Wife, have not been fulfilled.
>
> 4.  The Husband's income, assets and net worth are now substantially more than the amount shown by his Financial Affidavit filed in evidence February 3, 1981.

Included in the relief requested by Faye was an increase in the monthly payments to her, which her motion referred to as alimony.

On or about January 12, 1982, John filed a Motion to Dismiss in which he argued:

1.    That this Court does not have jurisdiction of this matter with reference to seeking of a Motion for Modification for the following reasons:

a.    That the Court has lost its jurisdiction with regard to a Motion for Modification at the time of the filing of the Notice of Appeal by the Wife.

b.    That the Wife is attempting to modify a property settlement agreement, which is a non-modifiable document under the laws of the State of Florida.

2.    That this same matter was argued in a previously filed Motion for Modification with reference to undue influence, the fact the Wife was unable to make ends meet on the documents submitted by her at the trial, and the Husband submits that the Wife is now attempting to do again what this Court has ruled it had no jurisdiction to do and that is to appeal a case a year after a decision has been rendered.

3.    That the parties agreed and each was adequately represented by counsel with regard to the matters disposed of in the property settlement agreement, and the Wife cannot now be heard to complain about a lack of consideration as reflected in paragraph 1 of her frivolous motion.

4.    That counsel for the Wife is engaged in total harassment of the Husband, requiring that the Husband secure counsel to defend petitions that are substantially similar to ones that had previously been dismissed and are presently on appeal.

5.    Allegations such as those contained in paragraph 3 of "Husband's verbal promises" which is totally contrary to the written document signed by the parties, is totally fallacious and is improper pleading.

6.    That paragraph 4 is a bold-faced allegation, unsupported by any documentation, is an improper statement, and is about one year late in coming.

On or about February 4, 1982, John filed a "Husband's Memorandum in Support of Motion to Dismiss", which stated

> that the [divorce] agreement was intended not merely for the support of the former Wife and the minor child of the marriage, but also as a full and complete settlement of the property rights. Where one party surrenders valuable property interests and at the same time is to receive periodic payments specified as alimony, such agreements are not subject to modification. Mills v. Mills, 339 So. 2d 681, 684 (Fla. 1st Dist. 1976).

John maintained that Faye "fail[ed] to allege the elements which would constitute a cause of action for modification of the property settlement agreement between Mr. and Mrs. Daugharty." John also alleged that the court lacked jurisdiction to decide the case because the subject matter of Faye's Motion for Modification and Enforcement of Final Judgment was substantially the same as the subject matter of Faye's appeal, which was pending at the time, from the denial of her Motion to Set Aside Property Settlement Agreement and to Cancel Deed.

On October 15, 1982, Faye filed an Amended Contempt Notice against John, in which she stated that she would apply for an order adjudging John "in contempt of Court for violation of the terms of the Final Judgment of Dissolution of Marriage * * * by failing to pay the alimony awarded thereby to FAYE E. DAUGHARTY". On January 11, 1983, Faye filed a Second Amended Contempt Notice

against John. On that same date, Faye filed an Amended Motion for Modification and Enforcement of Final Judgment.

In its Order Ruling on Motions, filed April 1, 1983, the Fourth Judicial Circuit dismissed Faye's Second Amended Contempt Notice and her Amended Motion for Modification and Enforcement of Final Judgment. The Order stated that

> the Wife's Amended Motion for Modification and Enforcement of Final Judgment and the Wife's Second Amended Contempt Notice are unsubstantiated by the evidence, and the Husband has paid all that was required to be paid by him under the terms of the Final Judgment of Dissolution of Marriage.

The District Court of Appeal affirmed this order in an unpublished per curiam opinion filed February 10, 1984.

## Case No. 82-12416-CA

On October 15, 1982, Faye filed a Complaint in the Fourth Judicial Circuit, to set aside the Stipulation and Final Judgment pursuant to rule 1.540(b) of the Florida Rules of Civil Procedure. In her complaint, Faye alleged that "Defendant had perpetrated a fraud upon the Court by the preparation, execution and filing of a false and fraudulent affidavit which did not constitute a truthful representation of Defendant's income, assets and liabilities". On or about March 21, 1983, John filed an Answer asserting, among other things, the defense of res judicata, since the issues, in his view, were the same as those

previously ruled upon in case number 81-112-CA. Accordingly, John moved for an entry of summary judgment in his favor.

In an Order on Motions and Partial Summary Judgment, filed October 3, 1983, the Fourth Judicial Circuit vacated, in part, the February 3, 1981, Stipulation and Final Judgment, including Faye's conveyance of her interest in the Landon Imperial Apartments.

On January 3, 1984, Faye filed a Motion for Temporary Alimony and Suit Money. In an Order for Temporary Alimony, filed March 8, 1984, the Fourth Judicial Circuit ordered John to "pay to the Plaintiff the sum of $1,800.00 on or before March 10, 1984, and a like sum of $1,800.00 on the 10th day of each and every month thereafter, until further Order of this Court, as and for temporary alimony."

On September 26, 1984, the District Court of Appeal reversed the Fourth Judicial Circuit's October 3, 1983, order and remanded with instructions to dismiss Faye's complaint with leave to amend, thereby reinstating the Stipulation and Final Judgment. See Daugharty v. Daugharty, 456 So. 2d 1271, 1274 (Fla. Dist. Ct. App. 1984).[4] The District Court of Appeal stated:

--------

[4]In an Order on Motion for Entry of Money Judgment, filed June 12, 1985, the Fourth Judicial Circuit determined all amounts due Faye pursuant to the Stipulation and Final Judgment. Accordingly, the court ordered John to pay Faye $43,600. However, the court deducted from this total the amounts already paid by John pursuant to the Fourth Judicial Circuit's Mar. 8,

(continued...)

Because the principles of law enunciated in <u>Yohanan [v. DeClaire</u>, 421 So.2d 551 (Fla. App. 4th Dist. 1982)] and <u>Brown [v. Brown</u>, 432 So.2d 704 (Fla. App. 3d Dist. 1983)], have been disapproved by our Supreme Court, we would be without authority to affirm the judgment in this case even if we believed that appellee's complaint properly alleged the perpetration by the husband of an extrinsic fraud.  Here, as in <u>DeClaire v. Yohanan</u>, the allegedly false financial affidavit submitted by the husband was before the court which dissolved the marriage of the parties, and the husband's financial condition was or could have been made an issue in that case.  Accordingly, the accuracy of the financial affidavit could have been questioned in those proceedings.  The appellee had an opportunity to question the accuracy of the affidavit  * * *

      *     *     *     *     *     *     *

Here, as in <u>DeClaire</u>, the fraud perpetrated by appellant in connection with the filing of his financial affidavit, if indeed the affidavit was false, was intrinsic fraud and did not constitute fraud upon the court.

we conclude that this case must be remanded to the trial court with instructions to dismiss the wife's complaint with leave to file an amended complaint should the wife feel that she can properly and in good faith allege misconduct by attorney Harden or collusion between Harden and her husband or her husband's attorney which prevented her from presenting her case in the divorce action.  Conduct by an attorney which amounts to connivance at the defeat of his own client, or conduct by a party which prevents an opposing party from fairly presenting his or her claim or defenses does constitute fraud on the court.  * * *  [<u>Id.</u> at 1273-1274].

On remand, after Faye had filed an amended complaint, the Fourth Judicial Circuit held a 3-day trial.  In its judgment

filed November 4, 1986, the Fourth Judicial Circuit found, among

other things, that:

The plaintiff, Faye Eubanks Daugharty, has failed to sustain the burden of proving by the greater weight of the evidence that:

1.  there was any misconduct by attorney Paul Harden or collusion between Harden and her former attorney or her husband's attorney, Thomas Greene, which prevented her from presenting her case in the divorce action;

2.  there was any conduct on the part of her former husband which prevented her from fairly presenting her claim or defenses in the divorce action;

3.  she was so afraid of her former husband that she was susceptible to the exercise of an undue influence over her and that she was unable to resist the husband's control of her mind and her will;

4.  her former husband exercised any undue influence over her in any of the proceedings in the dissolution of marriage proceeding;

5.  she was prevented by any conduct of her former husband or by the conduct of any attorney amounting to connivance that would defeat her claim or defenses;

6.  she was uninformed as to the value of any of the property in the dissolution of marriage proceeding but, quite to the contrary, the evidence conclusively proved that she provided an itemized list of all of the property owned by her former husband to her former lawyer, John Sulik, prior to any dissolution of marriage proceeding being instituted;

7.  there was any misconduct on the part of her dissolution attorney, Paul Harden * * *

The court denied Faye's request to set aside the Final Judgment

of Dissolution of Marriage, which incorporated the Stipulation

between John and Faye, and rejected Faye's request to vacate the conveyance of her interest in the Landon Imperial Apartments. The District Court of Appeal affirmed the Final Judgment in an unpublished per curiam opinion. See <u>Daugharty v. Daugharty</u>, 547 So. 2d 636 (Fla. Dist. Ct. App. 1989).

<u>Case No. 90-16340-CA</u>

After Faye initiated subsequent litigation involving essentially the same subject, the Fourth Judicial Circuit enjoined Faye from instituting further litigation stating:

> As set forth above, Ms. Daugharty has repeatedly instituted litigation against Defendants Greene, Harden and Daugharty raising the same allegations of alleged fraud in each instance. In view of the prior adjudications of this Court and of the First District Court of Appeal, this Court specifically finds and holds that Ms. Daugharty's actions in repeatedly making those same allegations in numerous separate complaints against those Defendants, individually and/or collectively, constitute frivolous litigation and an abuse of the processes of this Court. Accordingly, Ms. Daugharty will be, and she hereby is, enjoined from instituting any further litigation in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, against Defendants John F. Daugharty, II, Thomas H. Greene, and Paul M. Harden, individually or collectively, without first obtaining prior written permission from this Court.

As of the date of trial in this case, no further proceedings have been instituted in the Fourth Judicial Circuit.

Pursuant to the Stipulation and Final Judgment, John paid to Faye $30,000 during each of the years 1988 through 1993, and he

and his current wife, Sarah R. Daugharty, deducted these payments as alimony on their Federal income tax returns for those years.[5] Faye did not file Federal income tax returns for the taxable years 1988 through 1993.

OPINION

The principal issue for decision requires us to determine whether John's payments of $30,000 per year to Faye during the years 1988 through 1993 were made in discharge of his legal obligation to Faye arising out of the marital or family relationship (hereinafter sometimes referred to as alimony). A former spouse must include in gross income periodic payments received as alimony or separate maintenance. Sec. 71(a); Brown v. Commissioner, 50 T.C. 865, 867-868 (1968), affd. 415 F.2d 310 (4th Cir. 1969). On the other hand, payments which represent a property settlement are not taxable to the recipient under section 71. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). Pursuant to section 215(a), a taxpayer may deduct amounts paid to a former spouse if those payments are includable in the former spouse's

_____

[5]The record contains copies of canceled checks for 1987, 1988, and 1991 through 1993. On most of these checks, John inserted the notation "alimony".

gross income under section 71.  Yoakum v. Commissioner, supra at 134.[6]

Thus, if the payments in the instant case constitute alimony, then Faye must include these amounts in income,[7] and John and Sarah may deduct them pursuant to section 215(a). Alternatively, if the payments represent a property settlement, then Faye need not include these amounts in income, and John and Sarah are not entitled to deduct them.  Respondent has protected

---

[6]The provisions of sec. 71(a) applicable to this case provided:

(1)  Decree of divorce or separate maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

Secs. 71 and 215 were amended by sec. 422(a) and (b) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 795, 797. The 1984 amendments apply to divorce or separation instruments modified on or after Jan. 1, 1985, if the modification provides that the 1984 amendments govern.  The amendments do not apply to this litigation.

[7]In addition to sec. 71(a), sec. 61(a)(8) requires a taxpayer to include "Alimony and separate maintenance payments" in gross income.

the Government from a potential whipsaw in these cases by taking inconsistent positions in the respective notices of deficiency.

1. Judicial Estoppel

At the outset, Faye contends that we should not make an independent determination in this case as to whether the payments in question constitute alimony or a property settlement. Instead, Faye maintains that John is estopped by the doctrines of judicial estoppel, res judicata, the law of the case, stare decisis, and waiver from arguing that the payments represent alimony. Faye asserts that in the Florida State court litigation, John argued, and the Florida State courts accepted, the position that the Stipulation and Final Judgment was a property settlement agreement. Consequently, Faye contends that we should find that the payments in issue constitute nontaxable payments received pursuant to a property settlement.

Judicial estoppel focuses on the relationship between a litigant and the courts and seeks to protect the integrity of the judicial process by preventing a party from successfully asserting one position before a court and thereafter asserting a

contradictory position before the same or another court when it is in that party's interest to do so.  <u>Edwards v. Aetna Life Ins. Co.</u>, 690 F.2d 595, 599 (6th Cir. 1982); <u>Huddleston v. Commissioner</u>, 100 T.C. 17, 26 (1993).  Such manipulation of the judicial process has been characterized as "cynical gamesmanship * * * to suit an exigency of the moment", <u>Teledyne Indus., Inc. v. NLRB</u>, 911 F.2d 1214, 1218 (6th Cir. 1990); "blowing hot and cold", <u>Allen v. Zurich Ins. Co.</u>, 667 F.2d 1162, 1167 n.3 (4th Cir. 1982); and "playing fast and loose with the courts", <u>Scarano v. Central R.R.</u>, 203 F.2d 510, 513 (3d Cir. 1953).

In <u>Huddleston v. Commissioner</u>, <u>supra</u> at 28-29, this Court held:

> the doctrine of judicial estoppel is available in the
> Tax Court to be used in appropriate cases * * * to
> prevent parties from taking positions that are
> inconsistent with those previously asserted by the
> parties and accepted by courts and that would result in
> inappropriate and prejudicial consequences to the
> courts.[8]

We also explained:

> Acceptance by a court does not mean that the party
> being estoped prevailed in the prior proceeding with

[8]Federal standards govern the application of judicial estoppel in Federal court.  In <u>Warda v. Commissioner</u>, 15 F.3d 533, 538 n.4 (6th Cir. 1994), affg. T.C. Memo. 1992-43, the Court of Appeals for the Sixth Circuit explained:  "This is because the doctrine is designed to protect the integrity of judicial institutions, and because the question (when presented in federal court) primarily concerns federal interests."

regard to the ultimate matter in dispute, but rather only that a particular position or argument asserted by the party in the prior proceeding was accepted by the court. [Id. at 26; citations omitted.]

See also Edwards v. Aetna Life Ins. Co., supra at 599. In Huddleston v. Commissioner, supra at 29, we applied judicial estoppel to prevent the taxpayer from denying that he had fiduciary authority to act on behalf of a decedent's estate. This position was completely contradictory to the position that the taxpayer had taken, and this Court had accepted, in a prior case.

Judicial estoppel must be applied with caution in order "to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." Teledyne Indus., Inc. v. NLRB, supra at 1218; see also Allen v. Zurich Ins. Co., supra at 1166; Fazi v. Commissioner, 105 T.C. 436, 445-446 (1995). As a result, before applying judicial estoppel, courts not only require that a party have asserted an inconsistent position in an earlier proceeding, but also that the court in the earlier proceeding accepted that position. United States v. C.I.T. Constr., Inc., 944 F.2d 253, 258-259 (5th Cir. 1991); Edwards v. Aetna Life Ins. Co., supra at 599; Huddleston v. Commissioner,

supra at 27.[9]  Judicial estoppel is a doctrine adopted to protect the courts, and we possess discretion in invoking it.  Fazi v. Commissioner, supra at 446; see also In re Cassidy, 892 F.2d 637, 642 (7th Cir. 1990).

Thus, in the instant case, we must determine: (1) Whether John maintained before the Florida State courts that the provision of the Stipulation and Final Judgment requiring him to pay $2,500 per month was a property settlement under Florida law; and, if so, (2) whether this position was accepted by the State courts in their rulings.  Unless both requirements are satisfied, Faye's argument must fail.

In his motion to dismiss, filed in the Fourth Judicial Circuit on or about January 12, 1982, John stated that "the Wife is attempting to modify a property settlement agreement, which is a non-modifiable document under the laws of the State of

---

[9]In Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982), the Court of Appeals for the Sixth Circuit stated:

> Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists.  Thus, the integrity of the judicial process is unaffected; the perception that either the first or the second court was misled is not present.  [Citations omitted.]

See also Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990).

Florida."[10]  In his memorandum, filed February 4, 1982, John

argued

> that the [divorce] agreement was intended not merely
> for the support of the former Wife and the minor child
> of the marriage, but also as a full and complete
> settlement of the property rights.  Where one party
> surrenders valuable property interests and at the same
> time is to receive periodic payments specified as
> alimony, such agreements are not subject to
> modification.  Mills v. Mills, 339 So. 2d 681, 684
> (Fla. 1st Dist. 1976).

John contends that his position in the Florida courts is not

inconsistent with his current position that the part of the

divorce agreement calling for periodic payments is alimony.  We

---

[10]The relevant Florida divorce statute, as it existed at the
time of the parties' divorce on Feb. 3, 1981, provided:

> 61.14.  Modification of support, maintenance, or
> alimony agreements or judgments
>
> (1)  When the parties have entered into * * * an
> agreement for payments for, or instead of, support,
> maintenance, or alimony, whether in connection with a
> proceeding for dissolution or separate maintenance or
> with any voluntary property settlement, * * * and the
> circumstances or the financial ability of either party
> has changed * * *, either party may apply to the
> circuit court of the circuit in which the parties, or
> either of them, resided at the date of the execution of
> the agreement or reside at the date of the application,
> or in which the agreement was executed or in which the
> order was rendered, for a judgment decreasing or
> increasing the amount of support, maintenance, or
> alimony, and the court has jurisdiction to make orders
> as equity requires * * *  [Fla. Stat. Ann. sec. 61.14
> (West 1985)].

This statute has since been amended.  See Fla. Stat. Ann. sec.
61.14 (West Supp. 1997).

agree. John's position in the Florida courts was not that there were no support provisions in the agreement; rather, John made a legal argument that the agreement was nonmodifiable because it contained support provisions and a complete disposition of property rights.

Regardless of how we construe John's argument in support of his motion to dismiss, the application of judicial estoppel for which Faye argues also depends upon whether the Florida courts ruled that the Stipulation and Final Judgment, including the portion referring to the monthly payments to Faye, constituted a settlement of property rights. John contends, among other things, that the Florida courts never made a ruling favorable to John on that position.[11] Resolution of this issue requires a thorough review of the Florida State court litigation.

We begin with Faye's October 6, 1981, Motion to Set Aside Property Settlement Agreement and to Cancel Deed, which requested relief pursuant to rule 1.540(b) of the Florida Rules of Civil Procedure. This rule allows a party to obtain relief from a final judgment for fraud, misrepresentation, or other misconduct

---

[11]John also argues that it is "entirely possible that, while the periodic payments may not be alimony for purposes of 5 F.S.A. § 61.14, they still are for purposes of IRC §§ 71 and 215. * * * It may well be that state and Federal law definitions of alimony are simply different." John therefore maintains that the doctrine of judicial estoppel would not apply, since his position in the Florida State courts would not necessarily be inconsistent with the one he has asserted here. Given our resolution of the case, we need not address this contention.

of an adverse party.  Faye's motion presents her allegations of misconduct on the part of John.  John's motion to dismiss and memorandum in support thereof discuss the requirements imposed by rule 1.540 of the Florida Rules of Civil Procedure and set forth John's various arguments as to why Faye failed to satisfy these requirements.  The Fourth Judicial Circuit filed an order on December 8, 1981, which stated only that John's motion to dismiss was granted, while Faye's motion to set aside property settlement agreement was denied.  The District Court of Appeal affirmed in an unpublished per curiam opinion.

In his January 12, 1982, Motion to Dismiss, filed in response to Faye's January 11, 1982, Motion for Modification and Enforcement of Final Judgment, John asserted that the parties' agreement constituted a nonmodifiable property settlement agreement under Florida law.  Nevertheless, the relevant portion of the Fourth Judicial Circuit's April 1, 1983, Order Ruling on Motions simply stated:

> the Wife's Amended Motion for Modification and Enforcement of Final Judgment and the Wife's Second Amended Contempt Notice are unsubstantiated by the evidence, and the Husband has paid all that was required to be paid by him under the terms of the Final Judgment of Dissolution of Marriage.  [Emphasis added.]

The District Court of Appeal affirmed in an unpublished per curiam opinion.

We do not find in the above statement of the Fourth Judicial Circuit an <u>acceptance</u> of John's argument that the Stipulation and Final Judgment constituted a nonmodifiable property settlement agreement. Indeed, the reference to Faye's failure of proof suggests otherwise. Moreover, we note that the court did not have to make such a finding in order to decide against Faye. John had presented various other arguments that appear to have been the basis for the court's action.

In her complaint in case number 82-12416-CA, filed October 15, 1982, Faye again attempted to set aside the Stipulation and Final Judgment pursuant to rule 1.540(b) of the Florida Rules of Civil Procedure for fraud upon the court. In her complaint, Faye maintained that John's financial affidavit, filed in connection with the parties' divorce agreement, was fraudulent in that it understated John's assets. John's answer asserted, among other things, that Faye's complaint had failed to state a cause of action upon which relief could be granted, and the issues had previously been ruled upon by the Fourth Judicial Circuit in case number 81-112-CA.

Although the Fourth Judicial Circuit granted summary judgment for Faye and vacated most of the parties' Stipulation and Final Judgment, including Faye's conveyance of her interest in the Landon Imperial Apartments, the District Court of Appeal reversed this decision. See <u>Daugharty v. Daugharty</u>, 456 So. 2d

at 1274. The District Court of Appeal found that Faye had failed to plead or prove the perpetration by John of the sort of extrinsic fraud which could be denominated fraud upon the court and warrant the vacation of the Stipulation and Final Judgment. Id. at 1272. In its opinion, the court did make one reference to the Stipulation and Final Judgment as a "property settlement agreement". See id. at 1272. However, we decline to hold, on the basis of a single reference, that the court found that the Stipulation and Final Judgment, including the monthly payments, represented a property settlement agreement under Florida law. Instead, the court's opinion focuses, and ultimately turns upon, the insufficiency of Faye's pleadings with respect to an allegation of fraud upon the court. See id. at 1273-1274.

On remand, the Fourth Judicial Circuit, after 3 days of testimony and evidence, concluded that Faye had failed to carry her burden of proof with respect to any type of extrinsic fraud, which would be sufficient to warrant vacation of the Stipulation and Final Judgment. The District Court of Appeal affirmed in an unpublished, per curiam opinion.

Following our review of the rulings made by the Florida State courts with respect to this litigation, we have not found an acceptance by any of these courts that the Stipulation and Final Judgment, including the portion requiring John to pay $2,500 per month to Faye, constituted a property settlement

agreement under Florida law.  Courts must invoke judicial

estoppel with caution and only after it is clear that an earlier

court accepted the position in question.[12]  See Fazi v.

Commissioner, 105 T.C. at 445-446.  Consequently, we must make

our own independent determination as to whether the payments in

question constitute alimony or a property settlement.

## 2. Alimony/Property Settlement

The question we must decide is whether the $2,500 per month

payments by John to Faye were made "because of the family or

marital relationship in recognition of the general obligation to

support".  Sec. 1.71-1(b)(4), Income Tax Regs.  The requirement

that the payments be made in discharge of a legal obligation

imposed because of the family or marital relationship means that

the payments must be in the nature of support rather than a

[12]For similar reasons, we also reject Faye's remaining arguments that John should be precluded from asserting that the payments at issue represent alimony.  Res judicata, for instance, encompasses both claim and issue preclusion.  See Hemmings v. Commissioner, 104 T.C. 221, 231 (1995).  The doctrine of claim preclusion prevents a party from asserting a claim that has been, or should have been, the subject of prior litigation.  Id.  Issue preclusion prevents a party from relitigating an issue that the party previously litigated unsuccessfully in a different action.  Blanton v. Commissioner, 94 T.C. 491, 494-495 (1990).  Since we have found that the Florida courts did not make a determination as to whether the Stipulation and Final Judgment represented a property settlement agreement, res judicata is inapplicable.  The doctrine of the law of the case is similarly inapplicable in this context.  See Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of the case comes into play only with respect to issues previously determined.").

property settlement.  Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Bishop v. Commissioner, 55 T.C. 720, 724-725 (1971). This issue is a factual one and requires an examination of all the surrounding facts and circumstances.  Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976).

Factors which indicate that the payments are in the nature of a property settlement are:  (1) The parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets; (2) the recipient surrendered valuable property rights in exchange for the payments; (3) the payments are fixed in amount and not subject to contingencies, such as the remarriage or death of the recipient; (4) the payments are secured; (5) the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage; (6) the needs of the recipient were not taken into consideration in determining the amount of the payments; and (7) a separate provision for support was provided elsewhere in the decree or agreement.  Benedict v. Commissioner, 82 T.C. 573, 577-578 (1984); Beard v. Commissioner, supra at 1284-1285.

In the instant case, most of the above factors indicate that the payments were in the nature of support rather than a property settlement.  First, the payments are subject to two contingencies.  The Stipulation and Final Judgment provided that

John's monthly payments to Faye would terminate upon her remarriage or death. Payments received pursuant to a property settlement generally are not subject to contingencies and do not terminate upon the death of the payee. Instead, the obligation to pay is generally "absolute." See McCombs v. Commissioner, 397 F.2d 4, 8 (10th Cir. 1968), affg. T.C. Memo. 1967-124. Similarly, Florida law provides that a property settlement agreement represents a final division of property, which is not subject to modification absent proof of fraud, duress, deceit, coercion, or overreaching by the other party. See, e.g., Baker v. Baker, 394 So. 2d 465, 466 (Fla. Dist. Ct. App. 1981); Zedeck v. Zedeck, 334 So. 2d 87, 88 (Fla. Dist. Ct. App. 1976).

Second, nothing in the Stipulation and the Final Judgment stated that John's obligation to make the requisite payments was secured by any of his assets. The absence of this factor is a further indication that the payments were intended for Faye's support. Benedict v. Commissioner, supra at 578; Beard v. Commissioner, supra at 1285.

Third, there is no credible evidence that the amount of the payments plus the other property awarded to Faye pursuant to the Stipulation and Final Judgment equals approximately one-half of the property accumulated by the parties during marriage. In addition, given the manner in which the payments in issue were

structured, we have no way of knowing their eventual total amount.

Fourth, there was no other provision in the settlement that provided for Faye's support other than minor provisions for the period during which the marital home was to be sold.

In Beard v. Commissioner, supra at 1285, we stated that a failure to satisfy one or more of the factors articulated therein may tend to indicate that the payments in question are more in the nature of a support allowance. In the instant case, four of these factors strongly indicate that the payments were in the nature of support. Most important is the fact that John's obligation to make payments to Faye is not absolute but, rather, will terminate upon Faye's remarriage or death. As a result, we find that the payments in issue were made for Faye's support in discharge of John's legal obligation arising out of the family or marital relationship.[13] Therefore, Faye must include in her gross income the amounts received, and John and Sarah are

---

[13]Our analysis regarding the remaining factors listed in Beard v. Commissioner, 77 T.C. 1275, 1284-1285 (1981), also supports our conclusion. Item (1) (whether the parties intended the payments to effect a division of assets) favors John's position. In addition to John's testimony on this point, we note that Faye's State court pleadings indicate her belief that the payments should be commensurate with her needs and John's ability to pay. As to item (2), we believe that the evidence regarding whether Faye relinquished any property rights in exchange for the $2,500 per month payments is inconclusive. As to item (6), the evidence indicates that Faye's needs were a consideration in determining the amount of the payments. (Faye had been married 22 years and had no other means of support.)

entitled to a deduction for the amounts paid.  Secs. 71(a), 215(a).

## 3. Additions to Tax

Respondent determined that Faye is liable for an addition to tax under section 6651(a)(1) for 1988 through 1993.  Section 6651(a)(1) imposes an addition to tax upon a taxpayer who fails to file a timely Federal income tax return, unless the taxpayer demonstrates that the failure to file is due to "reasonable cause and not due to willful neglect".  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir. 1989), affg. 86 T.C. 492 (1986).  Faye did not file returns during the years in issue, and the payments from John represented the only income she received during those years.  On brief, respondent argues that Faye consistently took the position in the Florida State courts that the amounts in question constituted modifiable alimony payments, and, therefore, she was required to report these amounts on Federal income tax returns for these years.

At trial, Faye's attorney in the Florida State court proceedings testified that he advised Faye after several of the rulings by the Florida State courts had been delivered that the monthly payments she was receiving from John constituted nontaxable property settlement payments.  Faye's attorney has

practiced law in Florida for over 47 years.  It is well settled that reasonable reliance on the advice of an attorney may constitute reasonable cause for failure to file a timely return. United States v. Boyle, supra at 250; Estate of La Meres v. Commissioner, 98 T.C. 294, 314 (1992).  We find that Faye's reliance on her attorney's advice provided her with reasonable cause for her failure to file income tax returns for the years in issue.  As a result, we hold that Faye is not liable for the additions to tax under section 6651(a).

Respondent also determined that Faye is liable for an addition to tax for failure to pay estimated tax under section 6654(a) for each of the years in issue.  Unless one of the statutory exemptions applies, imposition of this addition to tax is mandatory where prepayments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute.  Sec. 6654(a); Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992).  This section has no exception for reasonable cause and lack of willful neglect. Estate of Ruben v. Commissioner, 33 T.C. 1071, 1072 (1960); Kramer v. Commissioner, T.C. Memo. 1996-513.  Faye has not demonstrated that any of the statutory exemptions apply.  Thus, we sustain respondent's determination.

Decision will be entered for petitioners in docket No. 6023-95.

Decision will be entered for respondent in docket No. 6280-95, except that petitioner is not liable for the additions to tax under sec. 6651(a)(1).